IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CASSANDRA WALLER, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>*Acting Commissioner of Social Security,* )<br>)<br>    Defendant. ) | Case No. 1:22-cv-00026-SMD |

## **OPINION & ORDER**

On January 24, 2020, Cassandra Waller ("Ms. Waller") filed for a period of disability and disability insurance benefits ("DIB") alleging disability beginning December 20, 2019. Ms. Waller's application was denied at the initial administrative level. Ms. Waller then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing on January 6, 2021, and later issued an opinion and decision finding that Ms. Waller was not disabled. The ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") after the Social Security Appeals Council ("Appeals Council") denied review. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Ms. Waller now appeals the Commissioner's decision pursuant to 42 U.S.C. § 405(g). For the reasons which follow, the Commissioner's decision is AFFIRMED.[1]

---

[1] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 5); Def.'s Consent (Doc. 6).

**I.      STATUTORY FRAMEWORK**

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *See Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). Applying this framework, an ALJ employees a five-step process to make the benefits eligibility determination:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2] A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do – despite his impairments – based on the relevant evidence within the record. *Id.* The RFC may contain both exertional

---

[2] *McDaniel* is a Supplemental Security Income ("SSI") case. SSI cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

and non-exertional limitations. *Id.* at 1243-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[3] or (2) the testimony of a vocational expert ("VE").[4] *Id.* at 1239-40.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Further, reviewing courts are

---

[3] Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Philips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[4] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments" *Phillips*, 357 F.3d at 1240.

required to give deference to factual findings but with closer scrutiny of questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

For purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court must, despite the limited nature of review, scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F.2d at 1145.

## III.   ADMINISTRATIVE PROCEEDINGS

Ms. Waller alleged disability beginning December 20, 2019, Ms. Waller was forty-eight years old on her alleged disability onset date. Tr. (Doc. 15-6) pp. 2-5. She had past relevant work experience working for the Dothan City Schools in the school cafeteria where she continued working, four to five hours a day, five days a week, throughout the administrative proceeding. Tr. (Doc. 15-7) p. 8. In her application, in response to the question "[l]ist all of the physical or mental conditions (including emotional or learning problems) that limit your ability to work," Ms. Waller did not list any mental impairment nor identify any urinary issues or concerns. *Id.* at 6. Instead, Ms. Waller alleged disability due to back pain, pain running down both legs, difficulty getting out of bed, rapid heartbeat, and gout. *Id.*

The ALJ made the following findings with respect to the five-step evaluation process for Ms. Waller's disability determination. At step one, the ALJ found Ms. Waller had not engaged in any substantial gainful activity since the alleged disability onset date. Tr. (Doc. 15-2) p. 23. At step two, the ALJ found that Ms. Waller suffered from the following severe impairments: diabetes mellitus; hyperlipidemia; obesity; and osteoarthritis. *Id*. at 24.

At step three, the ALJ found that Ms. Waller did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. pt. 404, subpt. P, app.1. *Id.* at 25. The ALJ then proceeded to determine Ms. Waller's RFC as follows:

> [Ms. Waller] can lift up to twenty pounds occasionally and ten pounds frequently. With customary breaks, she can stand and/or walk for approximately six hours out of an eight-hour workday. She can sit for six hours in an eight-hour workday. She can perform simple, routine, repetitive tasks. She can experience few workplace changes introduced gradually. She can occasionally bend and stoop.

*Id.* at 26.

At step four, relying on the testimony from a Vocational Expert, the ALJ found that Ms. Waller was unable to perform any past relevant work. *Id.* at 30. At step five, the ALJ utilized the testimony of a Vocational Expert and determined that considering Ms. Waller's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could perform. *Id.* at 31. These jobs included "price marker, retail," "clerical marker, and "mail sorter." *Id.* at 32. Accordingly, the ALJ

concluded that Ms. Waller had not been under a disability from her alleged onset date through the date last insured. *Id.* at 33.

## IV.    MS. WALLER'S ARGUMENTS

Ms. Waller argues that the Commissioner's decision should be reversed for two reasons. First, Ms. Waller contends that the ALJ erred by failing to complete the Psychiatric Review Technique Form ("PRTF"), which she alleges was required by 20 C.F.R. § 404.1520a. Pl.'s Br. (Doc. 13) pp. 6-9. Second, Ms. Waller argues that the ALJ erred by failing to evaluate her urinary incontinence. *Id.* at 9-11.

## V.    ANALYSIS

### A.    Mental Impairment

Ms. Waller's argues that the Commissioner's decision is legally erroneous because the ALJ failed to complete and include a PRTF or conduct the PRTF technique for evaluating mental impairment in her written decision. *See* 20 C.F.R. § 404.1520a. In support of this argument, Ms. Waller cites *Moore v. Barnhart*, 405 F.3d 1208 (11th Cir. 2005), and *Mills v. Comm'r of Soc. Sec.*, 659 F.App'x 541 (11th Cir. 2016).

In *Moore*, the Eleventh Circuit, interpreting 20 C.F.R. § 404.1520a, held that "where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF, append it to the decision, or incorporate [the PRTF's] mode of analysis into his findings and conclusions." 405 F.3d at 1214. If a colorable claim of mental impairment has been presented at the administrative level and the ALJ fails to complete and append the PRTF, or conduct a complete PRTF analysis within ALJ's opinion, then "remand is required." *Id.*

6

In *Mills*, the Eleventh Circuit, citing *Moore*, held that where an ALJ "implicitly found" that a claimant presented "a colorable claim of mental impairment," the ALJ's failure to prepare the PRTF or include its analytical framework in the written order denying the claim required remand. 659 F. App'x at 542-43. The ALJ in *Mills* "did not make a specific finding regarding whether [the claimant] presented a colorable claim of mental impairment." *Id.* at 542. Nevertheless, the Eleventh Circuit found that the ALJ's order allowed the inference that the ALJ "implicitly found" a colorable claim "because the ALJ analyzed and discussed [the claimant's] evidence of mental impairment including complaints of depression and bipolar diagnosis." *Id.*

Ms. Waller argues *Moore* and *Mills* require remand in her case because evidence of "mental limitations" was presented at or before her administrative hearing and yet the ALJ did not prepare and append a PRTF. Pl.'s Br. (Doc. 13) at 7 (noting that Ms. Waller presented evidence of her "difficulty focusing, concentrating, and remembering instructions [and] difficulty in remembering to take her medication"). Additionally, Ms. Waller argues that the ALJ's opinion acknowledged record evidence of mental impairment by noting her "occasional treatment for anxiety and depression" and "associated complaints of concentration and memory problems." *Id.* Citing *Mills*, Ms. Waller argues that the ALJ's acknowledgement of this evidence of mental impairment in her decision *required* the ALJ to complete the PRTF technique for evaluating mental disability. *Id.*

The Commissioner does not dispute that the ALJ did not prepare a PRTF or conduct a PRTF analysis. But the ALJ's decision should be affirmed, the Commissioner argues, because, unlike the claimants in *Moore* and *Mills*, Ms. Waller failed to present a colorable

7

claim of mental impairment. Def.'s Br. (Doc. 14) p. 7 (arguing that "the ALJ properly found Plaintiff did not establish a medically determinable mental impairment during the relevant period."). The Commissioner argues that Ms. Waller's reliance on *Moore* and *Mills* is misplaced because, unlike the claimants in both of those cases, her counsel "affirmatively represented to the ALJ at the hearing that [Ms. Waller] was not raising" a claim of mental impairment. *Id.* at 8. After noting Ms. Waller's burden of proof in this matter, the Commissioner argues that a PRTF analysis was not required because Ms. Waller's counsel affirmatively represented to the ALJ that a claim of mental impairment was not presented. *Id*. at 8-9.

The parties agree that a PRTF analysis was not conducted by the ALJ. But the PRTF or its analysis is required *only if* a claimant asserts a colorable claim of mental impairment. If a claimant fails to present evidence sufficient to support the legal conclusion that a colorable claim of mental impairment possibly exists, then the ALJ is not required to conduct the PRTF analysis. *See, e.g., Mills*, 659 F. App'x at 542 (citing *Richardson v. United States*, 468 U.S. 317 (1984) ("A colorable claim, of course, presupposes that there is some possible validity to a claim.")).

In her opening statement at the administrative hearing, Ms. Waller's counsel informed the ALJ that the evidence would show that numerous *physical* conditions supported her claimed disability but did not mention *any* mental impairments.[5] During her

---

[5] "We will present testimony of a claimant who has chronic, severe back pain, and in her claims, she says her back is out, but what they describe in the record at Exhibit 8F, page 14, was there was some degenerative changes of the L5 of the spine. She will testify that the pain runs down her legs. Sometimes, she can't get out of bed. She also has some heart issues and anemia as well as gout. We will submit that the impairments in her medical records constitute an objective basis for the subjective testimony she's gonna offer regarding

testimony before the ALJ, Ms. Waller advised the ALJ that she was not receiving any treatment for her mental health. (Doc. 15-3 at 17). At the close of the hearing, the ALJ asked Ms. Waller's counsel "are you alleging depression or anxiety as severe impairments here or as causing any limitations of functioning?" and Ms. Waller's counsel responded "No, Ma'am." (Doc. 15-3 at 32).

In her reply brief, Ms. Waller argues that she made a colorable claim of mental impairment and that such a claim is found in other record evidence including the Function Report. Pl.'s Reply (Doc. 18) p. 2 ("Ms. Waller's Function Report includes specific complaints of mental limitations: she states that she has difficulty focusing, concentrating, and remembering instructions. She included specific difficulty in remembering to take her medication."). The reply brief makes no mention of the hearing before the ALJ nor the concession of Ms. Waller's counsel that she was *not* asserting severe impairment resulting from depression or anxiety. Instead, Ms. Waller argues that because other record evidence, such as the Function Report, includes specific complaints about prior mental limitations a colorable claim of mental impairment was presented to the ALJ requiring the PRTF analysis. *Id.*

This argument is unavailing. Setting aside the fact that Ms. Waller's counsel expressly disclaimed the existence of any severe mental impairment in response to the ALJ's direct question concerning the substance of Ms. Waller's claim, the other record evidence is insufficient to establish a colorable claim of mental impairment requiring a

---

her limitations and that she would qualify for benefits under the Social Security ruling 96-19 when you look at her limitations." (TR. at 42-43)

9

PRTF analysis. *See, e.g., Sesberry v. Astrue*, 2010 WL 653890 (M.D. Fla. 2010) (holding that a colorable claim of mental impairment was not presented despite two medical notations in the record pertaining to mental symptoms, a referral for psychiatric evaluation, prescriptions for antidepressants, and testimony of the claimant regarding negative feelings impacting his life).

A claimant must do more to meet her burden of providing evidence to support a colorable claim of mental impairment than make general statements expressing concern about mental wellness. In order to establish a colorable claim of mental impairment a person must identify the impairment and show that the impairment resulted from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and the mental impairment "must be established by medical evidence consisting of signs, symptoms and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 404.1508. The record presented to the ALJ did not offer evidence establishing a colorable claim of mental impairment. *See, e.g.*, *Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011) (explaining that a claimant fails to present a colorable claim of mental impairment where the claimant "did not objectively show when or how [her mental impairment] affected her ability to perform basic work skills."). Accordingly, Ms. Waller's argument fails.

  B. **Failure to Evaluate Urinary Issues**

Ms. Waller next argues that remand is required because the ALJ failed to evaluate one of her physical conditions (urinary incontinence). Pl.'s Br. (Doc. 13) p. 9. The ALJ,

10

Ms. Waller contends, did not include an evaluation of her "documented urinary frequency" nor include "any finding as to the severity of the urinary frequency and urinary incontinence, whether it meets or equals a listing, or its impact on Ms. Waller's RFC regarding her limitations to perform work related functions." *Id.* at 11. The failure to evaluate and include findings concerning urinary incontinence, Ms. Waller contends, constitutes legal error requiring remand. *Id.*

The Commissioner argues that the ALJ did, in fact, consider and evaluate urinary incontinence. Def.'s Br. (Doc. 14) p. 9. Pointing to the text of the ALJ's decision, the Commissioner argues that "the decision refutes Plaintiff's assertion that 'there is no indication, express or implied, that the ALJ included an evaluation of documented urinary frequency." *Id.* at 10. Ms. Waller did not respond to the Commissioner's arguments in her reply brief. Pl.'s Reply (Doc. 18).

The ALJ's decision specifically refers to consideration of treatment notes related to urinary incontinence as a symptom of diabetes. Tr. (Doc. 15-2) p. 29) (stating that the treatment notes indicated "diabetes was causing some polyuria, polyphagia, and polydipsia."). In addition, the ALJ expressly stated that her determination was made "after careful consideration of the entire record." *Id.* at 23, 26. An ALJ's decision need not "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" shows consideration of the claimant's medical condition "as a whole". *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

The undersigned finds that the record in this case shows that the ALJ did, in fact, consider Ms. Waller's evidence of diabetic-related urinary incontinence. Accordingly, Ms. Waller's argument fails.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. A separate judgment will be entered.

DONE this 22nd day of February, 2023.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE